<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOS ORTZIAN,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>McNEILUS TRUCK &<br>MANUFACTURING, INC., ET. AL.<br>　　　　　　　　　Defendant. | Civ. No. 07-0646 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

BLUME, GOLDFADEN, BERKOWITZ, DONNELLY, FRIED & FORTE, P.C.
by: Michael Zerres, Esq.
1 Main Street
Chatham, NJ 07928

　　*Attorneys for Plaintiff*

SCHNADER, HARRISON, SEGAL & LEWIS, LLP
by: Carl J. Schaerf, Esq.
1400 Broadway
Suite 3100
New York, NY 10005

　　*Attorneys for Defendant McNeilus Truck & Manufacturing, Inc.*

**DEBEVOISE, Senior District Judge**

　　This matter comes before the court on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 by Defendant McNeilus Truck and Manufacturing, Inc. ("McNeilus"). Plaintiff Christos Ortzian asserts two claims arising out of injuries he suffered when he fell from a platform affixed to the rear of a cement truck designed and manufactured by McNeilus. In the first, he claims that the platform was defectively designed, and that his injuries

were caused by that defect. Mr. Ortzian's second cause of action alleges that McNeilus failed to properly warn him of the danger of falling from the platform. McNeilus argues that summary judgment should be granted on both claims because (1) the testimony proffered by Mr. Ortzian's expert witness does not does not meet the requirements contained in Federal Rule of Evidence 702, (2) Mr. Ortzian has failed to establish that the alleged defect was the cause of his injuries, and (3) Mr. Ortzian's design defect claim is barred because his proposed alternative design conflicts with federal regulations promulgated by the Occupational Safety and Health Administration ("OSHA").

Mr. Ortzian concedes that his failure to warn claim must fail for lack of evidence, and as to the design defect claim, Mr. Ortzian has not produced evidence that the alleged defect was the cause of his injuries. Therefore, summary judgment for McNeilus will be granted on both claims. Since the court grants summary judgment on the design defect claim on the grounds of failure to prove causation, McNeilus' argument that the proposed alternative design conflicts with OSHA regulations need not be addressed.

## I. BACKGROUND

Mr. Ortzian was formerly an employee of Eastern Concrete Materials, Inc. As part of his employment, he made cement deliveries using a truck designed and manufactured by McNeilus. After each delivery, Mr. Ortzian was required to clean the "charge hopper," a mechanism at the rear of the truck used to dispense liquid concrete that connected to the mixing tank. In order to do so, he climbed a ladder permanently affixed to the rear of the truck, stood on an elevated platform, and used a water hose to wash away any semi-hardened cement clinging to the metal walls of the hopper. The platform on which Mr. Ortzian stood while completing this task measured approximately 24 by 12 inches, and was situated nine feet above the ground. It was

surrounded on three sides by a single railing made of steel pipe that sat roughly 33 inches above the base and a metal toe plate that extended several inches upward from the edge of the platform. The toe plate and railing did not encompass the area where the ladder met the platform, and thus left a gap of 18 and a half inches where there were no devices to stop an individual from falling off the platform.

 While cleaning the charge hopper on July 27, 2005, Mr. Ortzian fell from the platform to the pavement below, resulting in a traumatic head injury that required him to miss 18 months of work and led to ongoing seizures, migraines, and dizziness. Since there were no witnesses to the fall, Mr. Ortzian's recollections serve as the only evidence of its cause. Mr. Ortzian testified at his deposition that he was standing on the platform facing the charge hopper just before he fell. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. A 33:20-34:14.) However, he testified that he could not remember whether he fell forward toward the charge hopper or backward through the gap in the railing. (Id. at 37:11-16.)[1] Similarly, Mr. Ortzian could not recall whether he was crouching or standing upright immediately before he fell. (Id. at 34:18-20.) Mr. Ortzian testified that it was extremely hot that day and he did not remember whether he lost consciousness before falling (Id. at 37:17-38:21), and states in his brief that "[p]erhaps [P]laintiff fainted or slipped." (Pl.'s Br. Opp'n Mot. Summ. J. 5.)

 Despite the fact that he does not remember the details of his fall, Mr. Ortzian alleges that it was caused by design defects relating to the platform. Specifically, Mr. Ortzian argues that McNeilus should have included a "middle rail" situated between the platform and the single

---

[1] Despite the fact that Mr. Ortzian clearly testified that he does not recall whether he fell forward into the railing or backward through the gap above the ladder, his Brief states that "in any event, he fell backward through the through the gap in the railing arrangement above the ladder." (Pl.'s Br. Opp'n Mot. Summ. J. 5.) That assertion is without support in Mr. Ortzian's testimony or any other evidence.

3

guard rail in order to keep truck operators from falling through the 33-inch gap between the two. Furthermore, Mr. Ortzian contends that McNeilus should have included a hinged "T-bar" or "J-bar" gate consisting of a horizontal rail and vertical guard enclosing the space above the ladder that a truck operator could latch closed behind him once he entered the platform. Mr. Ortzian's expert introduced a report and deposition testimony to that effect. See (Pl.'s Br. Opp'n Summ. J., Ex. F). In his report, the expert stated that "[e]ither of these safety features is a practical and feasible alternative that would have prevented the fall of Christos Ortzian or other user's [sic] without impairing the function of the platform." (Id. at 3.) However, the report made no conclusions as to whether Mr. Ortzian fell through the gap in the single railing above the ladder or between the railing and the platform. In fact, the expert testified in his deposition that he did no testing to confirm that the proposed modifications would have prevented Mr. Ortzian's fall. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. B 65:15-19.)

### III.  DISCUSSION

As discussed above, Mr. Ortzian concedes that this court should grant summary judgment and dismiss his failure to warn claim. He states in his brief that "the failure to warn claim must fail for the reason that [P]laintiff's expert does not advance a warning opinion." (Id. at 22, n. 4.) Similarly, Mr. Ortzian's Statement of Facts admits to McNeilus' allegation that his expert "cannot point to any lack of knowledge (whether of the type provided by warnings or otherwise) on the part of Mr. Ortzian which caused this accident." (Pl.'s Statement of Material Facts Opp'n Mot. Summ. J. ¶ 40); (Def.'s Statement of Material Facts Supp. Summ. J. ¶ 40.) Therefore, summary judgment will be granted in favor of McNeilus on the failure to warn cause of action. The design defect claim, however, requires the court to examine Mr. Ortzian's allegations

regarding causation in light of the standard of review applicable to requests for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a

5

genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

Under that standard of review, it is clear that Mr. Ortzian has not raised a material dispute as to whether the alleged defects caused his injury, and McNeilus is therefore entitled to summary judgment.  That holding is compelled by the Court of Appeals for the Third Circuit's decision in Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69 (3d Cir. 1996).  In Fedorczyk, a passenger on a cruise ship who fell while taking a shower sued the company that designed and operated the ship.  The suit alleged that the bathtub was defectively designed inasmuch as it contained only four anti-skid strips, which were spaced far enough apart that the plaintiff could fit her foot between the strips without touching them.  Id. at 72.  Like Mr. Ortzian, the plaintiff in Fedorczyk could not remember the exact circumstances of her fall, including where her feet were or whether the tub was slick due to soap and water from her bathing.  However, she alleged that she would not have fallen if the bathtub had included a sufficient number of anti-skid strips to assure that her feet would be in contact with the strips no matter where she stood.  Id.  In support of that contention, the plaintiff in Fedorczyk introduced an expert, who testified that the tub did not conform to safety standards promulgated by the Consumer Products Safety Commission.  However, the expert also testified that slips such as the one at issue in the case can happen under any circumstances, and that there is no way of preventing such falls altogether.  Id.

The Court of Appeals, exercising diversity jurisdiction and applying New Jersey law, emphasized that the plaintiff in a design defect case "must introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury."  Id. at 74.  It then held that summary judgment was appropriate because the plaintiff had failed to "create a material issue of fact regarding

6

causation." Id. at 76.  That holding was premised on the Court's finding that "the expert's conclusion that the failure to adequately strip the tub caused [the plaintiff's] accident was not legally admissible." Id. at 75.  Specifically, the Court stated that:

> Fedorczyk's expert testified that if there had been more stripping, it would be more likely that she would not have fallen.  He went on to conclude that the absence of strips caused her to fall.  We agree that the more stripping there is in the tub, the less likely it is a person would fall because of inadequate stripping.  However, the expert's opinion that inadequate stripping caused Fedorczyk's injuries is not based on any direct or circumstantial evidence of where she was standing when she fell.  It is speculative to conclude that the inadequate stripping caused Fedorczyk's injuries when no evidence in the record indicates where Fedorczyk was standing in the tub.  It is also speculative to infer that Fedorczyk was standing between the strips at the time of the accident solely from the fact that she fell.  Because the expert's conclusion is based on pure speculation, rather than a reasonable inference, it is without foundation and is inadmissible.

Id.

Once the expert's speculative conclusions that the plaintiff's fall was caused by the defective tub design were stricken, the Court found that:

> No evidence presented tends to prove Fedorczyk was standing either on or off the stripping at the time she fell. Without such evidence, the jury is left to speculate whether Royal Cruise's negligence was the cause in fact of her injury.  "A mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

Id. (quoting Restatement (Second) of Torts § 433B (1965)).

As was the case in Fedorczyk, Mr. Ortzian's expert assumes that because further safety measures would have made it less likely that Mr. Ortzian would fall from the platform the absence of those measures was the cause of his fall.  The opinion stated by Mr. Ortzian's expert in his report that the addition of a "T-bar" or "J-bar" gate and middle rail would have prevented

7

Mr. Ortzian's fall is not based on any evidence that Mr. Ortzian actually fell through the gap over the ladder or between the single rail and the platform. In fact, the very nature of those proposed modifications emphasizes the speculative character of the expert's testimony. Mr. Ortzian could not have fallen through both the area between the single railing and the platform and the gap over the ladder, but only through one or the other. In the absence of evidence regarding causation, the attempts to propose modifications covering various contingencies reveal the classic <u>cum hoc ergo propter hoc</u> ("with this, and therefore because of this") fallacy on which Mr. Ortzian's case rests; he asks the court to assume from the fact of the alleged defects that his fall was caused by those defects.

The testimony by Mr. Ortzian's expert reveals, however, that the fall may have taken place even if the alleged defects had been cured by adding the proposed modifications. The expert testified in his deposition that he did no testing to confirm that the proposed modifications would have prevented Mr. Ortzian's fall (Pl.'s Br. Opp'n Mot. Summ. J., Ex. B 65:15-19), and Mr. Ortzian testified that he does not know whether he fell backward through the gap above the ladder or forward toward the charge hopper. (Pl.'s Br. Opp'n Mot. Summ. J., Ex. A 37:11-16.) Given Mr. Ortzian's concession that he does not remember whether he was standing or crouching at the time he fell and that he may have fainted, it is speculative to infer that he fell through the gap above the ladder or between the single rail and platform, rather than over the railing itself. Therefore, the testimony by Mr. Ortzian's expert is inadmissible. <u>Fedorczyk</u>, 82 F.3d at 75.

Without the proffered expert testimony, there is no evidence that tends to prove that Mr. Ortzian fell through the gap above the ladder or between the single railing and the platform. Without such evidence, a jury would be left to speculate as to whether McNeilus' alleged

negligence in not including the proposed modifications was the cause of Mr. Ortzian's injuries. Therefore, it is the court's duty to direct a verdict and grant summary judgment in favor of McNeilus on the design defect claim.  Id.

### III.  CONCLUSION

For the reasons stated above, summary judgment in favor of McNeilus is granted and Mr. Ortizian's claims are dismissed.

The court will enter an order implementing this opinion.


        **s/ Dickinson R. Debevoise**
        DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: December 4, 2008